**PAN ATLANTIC GROUP, INC., Plaintiff,**

v.

**REPUBLIC INSURANCE COMPANY, Defendant.**

**REPUBLIC INSURANCE COMPANY, Petitioner,**

v.

**PAN ATLANTIC GROUP, INC., Pan Atlantic, Inc., U.S. Capital Insurance Company, Pan Atlantic Investors, Ltd., Aros Reinsurance Services, Inc., Goldstreet Syndicate Corporation, Pan Atlantic Underwriters Ltd., Pan Atlantic Reinsurance Company Limited, Pan Atlantic Insurance Company Limited, and Aros Reinsurance Services Limited, Respondents.**

No. 94 CIV. 7724 (DLC).

United States District Court, S.D. New York.

Feb. 10, 1995.

James D. McCarthy, Hughes & Luce, L.L.P., Dallas, TX and Louis M. Solomon, Stein, Zauderer, Ellenhorn, Frischer & Sharp, New York City, for plaintiffs-respondents.

Ellen Woodbury, William K. Perry, Chadbourne & Parke, New York City, for defendant-petitioner.

## OPINION AND ORDER

COTE, District Judge:

Despite the obligation under an insurance syndicate's governing agreement to arbitrate disputes, certain members of the syndicate have for three years fiercely resisted arbitration and now, having lost before the arbitration panel, seek to avoid enforcement of the arbitration award through removal of long pending state court litigation to federal court. In brief, on October 25, 1994, plaintiff Pan Atlantic Group, Inc. ("PAG") and the other

Respondents removed two cases to this Court. The first action was commenced by PAG against Republic Insurance Company ("Republic") in September 1991 in the Supreme Court of the State of New York (the "PAG Action"). The second action, a special proceeding in aid of arbitration, was commenced by Republic in March of 1993, also in the Supreme Court of the State of New York (the "Special Proceeding"). Both the PAG Action and the Special Proceeding were assigned to the Honorable Herman Cahn. On July 28, 1993, Justice Cahn in the PAG Action granted Republic's motion to compel arbitration and, in a fifty-five page opinion issued on June 10, 1994 in the Special Proceeding, required all the Pan Atlantic Respondents to participate in the arbitration.

The arbitration panel to which Justice Cahn referred the disputes between Republic and PAG and its affiliates issued two awards, both in Republic's favor, on October 20, 1994. On October 21, 1994, Republic moved, in the Special Proceeding, to confirm these awards. Then, as noted above, on October 25, 1994, Pan Atlantic removed the PAG Action and the Special Proceeding to this Court.

Republic now moves to remand these cases. For the reasons given below, Republic's motion is granted, and these actions are remanded to the Supreme Court of the State of New York.

## BACKGROUND

### A. The Syndicate

The litigation at issue here concerns the Pan Atlantic Group Reinsurance Syndicate (the "Syndicate"), which was formed and managed by PAG and three of its affiliates, Pan Atlantic Underwriters Ltd. ("PAUL"), Pan Atlantic Reinsurance Company, Ltd. ("PARCO"), and Pan Atlantic Insurance Company, Ltd. ("PAICO"). Other affiliates of PAG who are parties to this lawsuit are also members of the Syndicate.

Republic has been a part of the Syndicate since January 1, 1973, pursuant to a Memorandum of Agreement.[1] This agreement contains an arbitration clause and a choice of law clause selecting New York Law as the governing law. From 1975 until approximately 1985, Republic, which is licensed in the United States, acted as a contract-issuing company in whose name the Syndicate conducted its United States business.

Much litigation between Republic and Pan Atlantic has arisen over the business conducted by the Syndicate. Three suits were filed in the United States District Court for the Southern District of New York (two filed by Republic, in November of 1991 and February of 1992, and one filed by Pan Atlantic, in September of 1991) (collectively, the "Southern District Actions"), one in the commercial court in England (commenced on January 17, 1992 by PAUL against Republic[2]), two in the Supreme Court for the State of New York (the PAG Action and the Special Proceeding), and one in the District Court of Texas (filed by Republic in April of 1992, hereafter "the Texas Action"). Republic also initiated an arbitration before the American Arbitration Association between Republic and Pan Atlantic (the "AAA Arbitration") in September of 1991, arguably addressing all of the issues in dispute except perhaps those in the Texas Action.

---

1. This Memorandum was initially between Republic and PAG, but was later amended to include "[PAG], its subsidiaries and affiliates" (collectively, "Pan Atlantic").

   PAG's subsidiaries and affiliates include: Pan Atlantic, Inc. ("PAI"), U.S. Capital Insurance Company ("U.S. Capital"), Pan Atlantic Investors, Ltd. ("PAIL"), AROS Reinsurance Services, Inc. ("AROS, Inc."), Goldstreet Syndicate Corporation ("Goldstreet"), AROS Reinsurance Service Limited ("AROS Ltd."), PAUL, PARCO, and PAICO. All of these entities are Respondents herein.

   The subsidiaries and affiliates are organized under the laws of several jurisdictions: PAI is a Delaware corporation; U.S. Capital, PAIL, Aros Inc., and Goldstreet are New York corporations; PAICO and AROS Ltd. are English corporations; and PAUL and PARCO are Bermuda corporations.

2. The English Court action concerned disputes that had arisen concerning a Stock Purchase Agreement between Republic and PAUL and a Stop Loss Agreement between Republic and PAICO. Republic demanded arbitration against PAICO under the Stop Loss Agreement and brought one of the Southern District Actions (92 Civ. 1119) for declaratory relief and to compel arbitration. On June 22, 1992, the English Court set aside PAUL's writ of summons on the ground that England was not the proper forum.

## B. The Southern District Actions

The three Southern District Actions involve several different claims. The action filed on November 8, 1991 (91 Civ. 7580), was brought by PARCO against Republic for breach of a Trust Agreement. Republic counterclaimed, *inter alia*, that PARCO itself had breached the Trust Agreement and other related agreements. Republic moved to compel arbitration, and by Opinion and Order dated May 20, 1992, the Honorable Robert P. Patterson, to whom the case was then assigned, granted Republic's motion to compel arbitration of the dispute. The action was reassigned to this Court on September 13, 1994.

The diversity action filed on December 11, 1991 (91 Civ. 8362), was brought by Republic against Atlantica Insurance Company, Ltd., a Swedish insurance company that participated in the Syndicate, for declaratory relief and specific performance of Atlantica's obligations under a reinsurance agreement. Atlantica brought a third party complaint against PAG and PARCO, which in turn brought third party crossclaims against Republic. By stipulation and order filed on December 1, 1992, the Honorable Charles S. Haight referred PAG's and PARCO's crossclaims to arbitration.

The diversity action filed on February 14, 1992 (92 Civ. 1119), was brought by Republic against PAICO and PAUL, seeking a declaration of rights under a reinsurance agreement and an order compelling arbitration. By Order dated June 11, 1992, the Honorable Thomas P. Griesa stayed the action pending the resolution of the arbitration.

All of the matters referred to arbitration in the Southern District actions were submitted to the AAA Arbitration panel discussed below.

## C. The PAG Action and the AAA Arbitration

In the PAG Action, filed in September of 1991, PAG brought suit against Republic in the Supreme Court of the State of New York alleging tortious interference. On September 16, 1991, Republic moved to compel arbitration of PAG's claims pursuant to the Memorandum of Agreement.

While the motion was pending, Republic initiated the AAA Arbitration on September 24, 1991. On June 22, 1992, after selection of the AAA panel and while the motion to compel arbitration was pending, the Honorable Herman Cahn referred certain motions pending in the PAG Action to the AAA panel. On September 22, 1992, the AAA panel directed "Pan Atlantic" to place $5.9 million into an escrow account pending the outcome of the AAA arbitration. PAG advised the AAA panel that it did not have the funds available and could not fund the escrow as ordered. Republic argued that the escrow should be funded by all of the Pan Atlantic parties, not merely by PAG.

Justice Cahn granted Republic's motion to compel arbitration on July 28, 1993, and denied PAG's motion to reargue on January 13, 1994. PAG appealed the July 28 and January 13 orders to the Appellate Division on February 28, 1994. The appeal of the July 28 Order was dismissed as untimely; the appeal of the January 13 Order has been stayed by Pan Atlantic's removal of the PAG Action to this Court.

## D. The Special Proceeding

For several months after the September 22, 1992 escrow order, all proceedings between Republic and Pan Atlantic ceased pending settlement discussions. These discussions were obviously unsuccessful, and Republic initiated the Special Proceeding in the Supreme Court of the State of New York by filing, on March 5, 1993, a "Petition to Confirm Arbitration Award and for Provisional Relief," in which it sought, among other things, to enforce the escrow portion of the AAA panel's order against PAG and its nine subsidiaries and affiliates who were named as respondents. The Special Proceeding was also assigned to Justice Cahn. Pan Atlantic answered the petition on June 22, 1993, alleging, *inter alia*, lack of personal jurisdiction and improper service of process.

In July 1993, Pan Atlantic filed a motion to transfer the Special Proceeding to the Supreme Court's civil trial calendar and requested a jury trial. Pan Atlantic argued

that a full trial on the merits was necessary in order to determine whether each of the Respondents was a proper party to the AAA Arbitration. In October 1993, Republic filed a motion in the Special Proceeding to compel all ten Respondents to arbitrate the claims asserted in the AAA Arbitration, and to strike Pan Atlantic's defenses of lack of personal jurisdiction and improper service of process. In response to this motion, on December 9, 1993, Pan Atlantic conceded that PAG, PAUL, PAICO, and PARCO were proper parties to the AAA Arbitration, and cross-moved to stay arbitration against PAI, U.S. Capital, PAIL, Goldstreet, AROS Inc. and AROS Ltd. On June 10, 1994, Justice Cahn, in a fifty-five page opinion, addressed all of the open issues in the case, with one exception.[3] At Republic's request, the court reserved decision on the affirmance of the AAA panel's escrow award against Pan Atlantic pending the supplemental results of an independent auditor's examination of the Pan Atlantic Syndicate books and records.[4]

In his opinion, Justice Cahn denied Pan Atlantic's motion to transfer the Special Proceeding to the "civil trial calendar," finding that

> the only relief which respondents can properly seek here is an evidentiary hearing.... However, ... respondents have failed to raise a triable issue of fact as to whether [PAI, U.S. Capital, PAIL, Goldstreet, AROS Inc. and AROS Ltd.] are proper parties to the AAA arbitration.

(Cahn Opinion at 20.) Justice Cahn held that all Respondents were properly served via a letter to an individual who was "an officer or director of each of the Respondents and personally controls each of the entities." (Cahn Opinion at 20.) Justice Cahn found that PAI, U.S. Capital, PAIL, Goldstreet, AROS Inc. and AROS Ltd. (the "Moving Respondents") waived their right to object to

the arbitration by failing to apply for a stay within 20 days of service of the original arbitration demand in September of 1991, and further that these respondents

> participated in the AAA Arbitration and their conduct between September of 1991 and 1992 constitutes yet another waiver of their right to object to their inclusion in that proceeding.
>
> Notwithstanding the waivers, *all of the Moving Respondents are parties to an agreement to arbitrate* by virtue of the 1977 Addendum to the Memorandum of Agreement, a written agreement which contains a broad and explicit arbitration clause. Furthermore, even accepting respondents' argument that the 1977 Addendum only applies to those Pan Atlantic entities that actually performed underwriting management services on behalf of the PAG Syndicate, respondents PAI, AROS [Inc.], and AROS Ltd. are proper parties to the AAA Arbitration as the alter egos of [PAG] and respondents PAIL and Goldstreet are bound to arbitrate by separate agreements with Republic executed on January 1, 1991 and January 1, 1993, respectively.

(Cahn Opinion at 53 (emphasis supplied).)

Pan Atlantic appealed the June 10 order to the Appellate Division on July 13, 1994. This appeal was consolidated with the appeals of the July 28, 1993 and January 13, 1994 orders and is currently stayed by Pan Atlantic's removal of the Special Proceeding to this Court.

### E. Pan Atlantic's Appeals to the New York Appellate Division

On February 28, 1994, Pan Atlantic appealed two of Justice Cahn's orders in the PAG Action, dated July 28, 1993, and January 13, 1994.[5] On June 2, 1994, the Appellate Divi-

**3.** Justice Cahn's June 10, 1994, opinion appears as Exhibit L to the Affidavit of Ellen Woodbury, and is hereafter referred to as the "Cahn Opinion".

**4.** At oral argument on June 7, 1994, Republic informed the court that Republic had agreed to abide by the AAA panel's request that Republic refrain from enforcing the escrow award until Arthur Andersen & Co., retained by the panel to

conduct a financial review and advise the panel with respect to certain accounting and actuarial matters in dispute between the parties, could issue a supplemental report to its original report of December of 1993.

**5.** These orders, respectively: 1) granted Republic's motion to compel arbitration; 2) denied Pan Atlantic's motion to reargue the motion to compel.

sion, First Department, dismissed as untimely PAG's appeal of the July 28, 1993 order. On July 28, 1994, the Appellate Division stayed the order of January 13, 1994, pending appeal.

On July 13, 1994, Pan Atlantic appealed Justice Cahn's order in the Special Proceeding dated June 10, 1994.[6] On August 25, 1994, the Appellate Division stayed enforcement of the June 10, 1994 order, and consolidated its appeal with that of the January 13, 1994 order, on condition that Pan Atlantic perfect its appeals for the First Department's November term. Oral argument was scheduled for November 3, 1994, but did not occur because of the October 25, 1994 removal to this Court.

**F. The Texas Action**

In April 1992, Republic commenced an action in Texas (the "Texas Action") against PAG's parent company, PAI, in which it sought, *inter alia,* to enforce a guarantee agreement executed by PAI. This agreement did not contain an arbitration clause. PAI asserted counterclaims and five other Pan Atlantic companies intervened in the Texas action, asserting tort claims against Republic and other third-party defendants. Republic nonsuited its original claims and the parties were realigned, with the Pan Atlantic companies appearing as plaintiffs and Republic appearing as the defendant. Republic raised arbitrability as a defense and moved to compel arbitration of all of the Texas claims.

On May 14, 1992, the Honorable Hugh Snodgrass granted Republic's motion. Subsequently, the Honorable Joe B. Brown granted Pan Atlantic's motion for rehearing. On rehearing, the Honorable Candace Tyson denied Republic's motion to compel arbitration of the Texas claims by order dated June 17, 1994, on the ground that Republic had waived its right to arbitrate by bringing suit in Texas. Judge Tyson held that,

As a result of Republic's waiver of its right to arbitrate, if any, none of the Plaintiffs in this lawsuit may be compelled to arbitration with Republic, except for the Pending Arbitration Claims set forth in paragraph 1.[7]

At oral argument on Pan Atlantic's motion for a partial stay of arbitration on July 15, 1994, Judge Tyson indicated that Republic had "waived [its] right in the Texas claims and all the claims in this lawsuit. There would be [a] stay as to these claims in this lawsuit." And later that,

nothing that was previously before the arbitration the Court's ruling on. The Court's ruling on this case only, the waiver in this case and the tort claims in this case and this case. [sic] Therefore, the Court will stay the arbitration involving the tort claims and the claims before this court.

Immediately following oral argument, the Texas court issued an order enforcing its waiver order, and granting the Pan Atlantic parties' motion for partial stay of arbitration, stating:

The Arbitration between Republic ... and [PAG] (the "AAA Arbitration") is stayed insofar as it seeks to adjudicate any disputes (between Plaintiffs and Republic) which this court held waived pursuant to its June 17, 1994 order....

At oral argument of Republic's motion to clarify this order on September 21, 1994, where Republic sought to determine the relationship between Judge Tyson's order and the June 10, 1994 order of Justice Cahn, Judge Tyson indicated that, "my intent is not to interfere with anything except just have [the Texas Court of Appeals] enforce my order." An appeal by Republic of that order is currently pending.

**G. The AAA Panel's Awards**

Republic made its demand for arbitration on September 24, 1991. On October 10, 1991, Pan Atlantic filed its response and

---

**6.** This order provided that the six Respondents resisting the arbitration must arbitrate their claims before the AAA panel, and dismissed Pan Atlantic's motion to transfer the case to the court's civil trial calendar as well as various Pan Atlantic defenses.

**7.** Judge Tyson delineated the arbitrable claims as: 1) PAG, PAICO, PARCO, and PAUL's breach of contract claims against Republic; and 2) PAG, PAICO, PARCO, and PAUL's claims against Republic for its wrongful termination of the Pan Atlantic parties as Underwriting Managers.

counter-claims. The full arbitration panel was selected on June 15, 1992. In May 1993, the panel retained Arthur Anderson & Co. to conduct a financial review of the issues in dispute. After an intensive six month investigation, Arthur Anderson rendered its report in December 1993. The AAA Arbitration hearings took place in March, June and July, 1994. On October 20, 1994, the panel issued two final awards.

The First Arbitration Award ("First Award") addressed disputes between Republic and PAG, PAUL, PAICO and PARCO in the various arbitration demands and the PARCO action (one of the Southern District Actions), and provides that one or more of Respondents PAG, PAICO, PARCO, and PAUL are liable for $20,271,415 plus £180,962 (Sterling). In the First Award, the panel found that PAG, PAICO, PARCO, and PAUL

> created an accounting and bank account maze, making it impossible for Republic and other Syndicate members to trace the flow of funds and to detect the mismanagement of Syndicate finances. They further breached the Agreement in violating their fiduciary obligations to Republic by failing to remit to Republic funds collected as Republic's agent.

(First Award at 11.) Specifically, the panel found that the four Pan Atlantic entities combined bank accounts

> without adequate controls ..., [m]ade cash transfers from commingled funds ... to Pan Atlantic affiliates with no alleged responsibilities ... with virtually no documentation, and failed to produce satisfactory documentation even though such documentation was requested by

Arthur Anderson and the panel. (*Id.* at 12.) Because of "the commingling of fiduciary and non-fiduciary funds, the conversion of funds owed to Republic and various unsupported intercompany transfers of funds," the panel held the four Pan Atlantic parties "jointly and severally liable" to Republic. (*Id.* at 13.)

The panel also found that the Pan Atlantic parties' claim "that they have advanced millions of dollars on [Republic's] behalf is based on accounting subterfuge." (*Id.*) Consequently, the panel denied all of the counter-claims by PAG, PAUL, PAICO and PARCO. (*Id.* at 19.)

The Second Arbitration award concerned claims between Republic, on the one hand, and PAI, PAIL, AROS Inc., AROS Ltd., Goldstreet and U.S. Capital. The panel noted that

> Because of the failure to maintain separate books and records and separate bank accounts for business underwritten in Republic's name, and because of this commingling of records and funds and the lack of documentation on inter-company transfers between Pan Atlantic affiliates, there is no way to clearly demarcate any independent operational responsibilities of various Pan Atlantic affiliates with respect to the Memorandum of Agreement.

(Second Award at 5.) Effective only at the expiration of the stays of the Appellate Division, it incorporated many of the findings of the First Award and found that, due in part to the

> commingling of fiduciary and non-fiduciary funds, the conversion of funds owed to Republic and various unsupported inter-company transfers of funds among the Respondents, ... PAI, PAIL, AROS Inc., and AROS Ltd. shall each be jointly and severally liable for all sums owed to Republic by any Respondent under the terms of this award and all sums owed by [PAG, PAUL, PAICO, or PARCO] under the terms of the First Arbitration Award.

(*Id.* at 6.) The panel also found that PAIL and Goldstreet owed Republic their share of Syndicate losses, $159,118 and $270,292 respectively.

On October 21, 1994, the date the arbitration awards were received by both parties, Republic filed motions in the Special Proceeding to confirm both awards. Until the removal of the PAG Action and the Special Proceeding, these motions were returnable on November 3, 1994.[8]

8. In its argument in favor of vacating the arbitration awards, Pan Atlantic contends that the order of the Texas Court, when combined with the stays issued by the Appellate Division of the Supreme Court of the State of New York, limit the jurisdiction of the AAA panel to the breach of

On October 24, 1994, Republic applied to Justice Cahn, by order to show cause, for a hearing for the attachment of the assets of PAG, PAUL, PAICO, and PARCO to the extent of $20,271,415. Justice Cahn issued an *ex parte* temporary restraining order enjoining all Respondents and "all other persons or entities acting on the behalf or at the behest of Respondents" from disposing of any assets of PAG, PAUL, PARCO, and PAICO to the extent of $20,271,415 "other than in the ordinary course of business". Justice Cahn scheduled an expedited attachment hearing for October 31, 1994.

### H. Pan Atlantic's Removal

On October 25, 1994, Pan Atlantic filed its Notice of Removal to the United States District Court for the Southern District of New York. On October 28, 1994, Pan Atlantic made an emergency application to the Honorable Morris E. Lasker, sitting as the emergency motions judge of this Court, to vacate the temporary restraining order entered by Justice Cahn. Judge Lasker granted Pan Atlantic's request and vacated the order with the recommendation that the matter be brought expeditiously to the assigned Judge.

On October 31, 1994, this Court accepted this case as related to *Pan Atlantic Reinsurance Company Ltd. v. Republic*, No. 91 Civ. 7580 (DLC), 1992 WL 116424 a case previously assigned to this Court. On the same day, this Court reinstated the temporary restraining order against all Respondents except U.S. Capital, enjoining them from

> removing from the State of New York or transferring, selling, pledging, assigning or otherwise disposing of any assets of Respondents PAG, PARCO, PAICO, and PAUL, or any personal or real property in which these four Respondents have an interest, or any debts owing to these four Respondents, all to the extent of $20,271,-415, and all other than in the ordinary course of business....

contract disputes between Republic, on the one hand, and PAG, PAUL, PARCO and PAICO, on the other hand. According to Pan Atlantic, the three matters in the United States District Court for the Southern District of New York were referred to the AAA panel for arbitration, and the

The temporary restraining order was then extended on November 14, 1994, with consent of all parties, until such time as the Court entered an opinion and order on the pending motion to remand.

### DISCUSSION

### I. Removal Jurisdiction and Remand Procedures in General

■ Because removal to federal court deprives the state court of jurisdiction, "[d]ue regard for the rightful independence of state governments requires that federal courts scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Finley v. United States*, 490 U.S. 545, 552–53, 109 S.Ct. 2003, 2009, 104 L.Ed.2d 593 (1989) (citations omitted). "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute[s] narrowly, resolving any doubts against removability." *Somlyo v. J. Lu–Rob Enterprises, Inc.*, 932 F.2d 1043, 1045–46 (2d Cir.1991), citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941). The burden of establishing that a case is within the federal court's removal jurisdiction is on the removing defendant. *Irving Trust Co. v. Century Export & Import, S.A.*, 464 F.Supp. 1232, 1236 (S.D.N.Y.1979), citing *Shamrock*, 313 U.S. at 108–09, 61 S.Ct. at 872.

■ Section 1447(c) of Title 28 provides that a motion to remand a case

> on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attor-

AAA panel therefore had jurisdiction to decide these issues. Nothing in the two New York Supreme Court actions (the PAG Action and the Special Proceeding), however, Pan Atlantic contends, was properly before the AAA panel.

ney fees, incurred as a result of the removal.

In connection with a motion to remand, the burden of proving federal removal jurisdiction is on the party seeking to preserve removal, not the party moving for remand. *Mermelstein v. Maki,* 830 F.Supp. 180, 184 (S.D.N.Y.1993). Where federal jurisdiction on removal is doubtful, the action should be remanded. *Video Connection of America v. Priority Concepts,* 625 F.Supp. 1549, 1550 (S.D.N.Y.1986), citing *Lowe v. Trans World Airlines,* 396 F.Supp. 9, 12 (S.D.N.Y.1975); 14A Wright, Miller & Cooper, Federal Practice and Procedure § 3739 (1994). In determining whether remand is appropriate, courts have noted three principal considerations: judicial economy, comity, and lack of prejudice. *Manas y Pineiro v. Chase Manhattan Bank, N.A.,* 443 F.Supp. 418, 420 (S.D.N.Y.1978). *Cf. Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988) ("judicial economy, convenience, fairness, and comity" should be weighed in deciding whether to exercise jurisdiction over pendent state-law claims); *Corcoran v. Ardra Ins. Co., Ltd.,* 842 F.2d 31, 36 (2d Cir.1988) (where court can dismiss when abstaining from difficult questions of state law, it may remand and thereby serve values of economy, convenience, comity and avoidance of delay).

## II. The Special Proceeding

■ Pan Atlantic argues that removal jurisdiction over the Special Proceeding is available through 9 U.S.C. § 205 (covering removal of actions relating to non-domestic arbitration), 28 U.S.C. § 1441 (the general removal statute, covering both federal question and diversity actions), or 28 U.S.C. § 1443 (covering civil rights actions).

### A. The Special Removal Provision: 9 U.S.C. § 205

The special removal provision of Title 9, United States Code, Section 205, provides:

When the subject matter of an action pending in a State court relates to an arbitration or award falling under the Convention[9], the defendant or defendants may, *at any time before the trial thereof,* remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.

9 U.S.C. § 205 (emphasis supplied). It is not disputed that the Special Proceeding relates to an arbitration falling under the Convention. In order for an action to "relate" to an arbitration under the Convention, four questions must be resolved,

(1) whether there is an agreement in writing to arbitrate the subject of the dispute; (2) whether the agreement provides for arbitration in the territory of a signatory of the Convention; (3) whether the agreement arises out of a legal relationship, contractual or not, which is considered commercial; and (4) whether a party to the agreement is a foreign citizen or the relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation to one or more foreign states.

*Jones v. Sea Tow Services New York, Inc.,* 828 F.Supp. 1002, 1015 (E.D.N.Y.1993) rev'd on other grounds, 30 F.3d 360 (2d Cir.1994); *see also Cargill Int'l S.A. v. M/T Pavel Dybenko,* 991 F.2d 1012, 1018 (2d Cir.1993). The arbitration at issue, involving an international reinsurance syndicate with worldwide membership and operations and involving at least four corporations (PAUL, PARCO, PAICO, and AROS Ltd.) domiciled or having their principal place of business outside the enforcing jurisdiction, clearly qualifies as "non-domestic" arbitration.

The critical issue with respect to removal under Section 205 is whether the removal took place "before the trial."[10] In *LaFarge*

---

9. "Convention" refers to the "Convention on the Recognition and Enforcement of Foreign Arbitral Awards", which is implemented by Chapter Two of the United States Arbitration Act, 9 U.S.C. §§ 201–208. The Convention applies to "non-domestic" arbitrations.

10. Legislative history provides no guidance on the construction of the phrase "before the trial," other than stating broad principles favoring international arbitration. *See* H.R.Rep. No. 1181, 91st Cong., 2nd Sess. (1970), U.S. Code Cong. & Admin. News 1970, pp. 3601, 3602 ("in the Committee's view, the provisions [implementing the

*Coppee v. Venezolana De Cementos; S.A.C.A., C.A.,* 31 F.3d 70, 72 (2d Cir.1994); the Second Circuit recently construed the "before the trial" clause in Section 205, concluding that defendants could not remove a state court action, which had been pending for only two months, after the state court had issued an interim injunction before arbitration. The plaintiffs in *LaFarge Coppee* had filed a petition in the state court for an injunction in aid of arbitration. The injunction, which was granted after a "brief hearing" on one day's notice, barred the transfer of control of a joint venture among the parties pending a ruling by the arbitration panel. *Id.* at 71. After plaintiffs tried to hold defendants in contempt of the injunction, defendants appealed the injunction to the Appellate Division, which denied the appeal. At that point, defendants sought to remove the state court action, and plaintiffs moved to remand. The District Court granted the motion to remand on the ground that the removal had been "untimely", *id.*, and defendants appealed.

After finding that it had no appellate jurisdiction to review the order to remand, the Second Circuit went on to conclude that, even if it had had jurisdiction, the removal was not timely under 9 U.S.C. § 205, because it had not taken place "before the trial."

> Though the proceedings in the State Court were brief, they resulted in *an adjudication of the entirety of the claim that the plaintiffs tendered for decision.* Their petition sought an injunction, in aid of arbitration, for the interim period [until arbitrators were able to rule].... The hearing at which the decision was reached to issue that injunction was therefore the only "trial" that would be held in the State Court concerning the petition filed by the plaintiffs. Since the removal petition was not filed before this "trial", the case was not removable under section 205.

*LaFarge Coppee,* 31 F.3d at 72–73 (emphasis supplied). Pan Atlantic seeks to avoid the teaching of *LaFarge Coppee* by declaring simply that its discussion of Section 205 is

merely *dicta.* As was true for the state court proceeding at issue in *LaFarge Coppee,* however, the only "trial" that was going to be held in the Special Proceeding had occurred before the removal.

The Special Proceeding was filed as a "Petition to Confirm Arbitration Award and for Provisional Relief." It was authorized by Section 7502 of the New York Civil Practice Law and Rules, which provides that "a special proceeding shall be used to bring before a court the first application arising out of an arbitrable controversy which is not made by motion in a pending action." N.Y.Civ. Prac.L. & R., § 7502(a). Section 7503 provides for applications to compel arbitration (such as that filed by Republic in the Special Proceeding) and provides that,

> A party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration. *Where there is* no *substantial question whether a valid agreement was made* or complied with, ... the court shall direct the parties to arbitrate. Where any such question is raised, *it shall be tried forthwith* in said court.

N.Y.Civ.Prac.L. & R., § 7503(a) (emphasis supplied). A party may also move to confirm or vacate an award. N.Y.Civ.Prac.L. & R., §§ 7510, 7511. An arbitration award may be vacated, however, only in narrow circumstances, specifically, where one of the following can be shown: 1) corruption, fraud, or misconduct in the procurement of the award; 2) partiality of an arbitrator; 3) imperfect execution or an unauthorized award; or 4) failure to follow the procedure set forth in the New York statute. N.Y.Civ.Prac.L. & R., § 7511(b). *See also Diaz v. Pilgrim State Psychiatric Center of State,* 62 N.Y.2d 693, 476 N.Y.S.2d 525, 465 N.E.2d 32 (1984) ("an arbitration award may not be vacated unless violative of public policy or wholly irrational").

New York law, therefore, provides for a hearing where there is a substantial question of whether a valid agreement to arbitrate exists, while severely limiting the grounds by which a party can challenge an arbitration

Convention] will serve the best interests of Americans doing business abroad by encouraging them to submit their commercial disputes to

impartial arbitration for awards which can be enforced in both U.S. and foreign courts.").

award. When there is a binding arbitration agreement, there is no "trial" *per se* since the purpose of an arbitration agreement is to avoid the delay and costs which may accompany a trial. *See Matter of Weinrot,* 32 N.Y.2d 190, 198, 344 N.Y.S.2d 848, 298 N.E.2d 42 (1973) (identifying speed and finality as two primary virtues of arbitration), *citing Amicizia Societa Nav. v. Chilean Nitrate & Iodine Sales Corp.,* 274 F.2d 805, 808 (2d Cir.1960) (citing avoidance of litigation as ostensible purpose for arbitration), *cert. denied,* 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960).

Through his June 10, 1994 opinion, Justice Cahn not only ruled on substantive and dispositive issues but also adjudicated the merits of the only issue which, had there been a substantial factual dispute, could have required a hearing. Since Pan Atlantic had "failed to raise a triable issue of fact as to whether the [Pan Atlantic entities were] proper parties to the AAA arbitration", no hearing or trial was necessary. (Cahn Opinion at 20.) Instead, Justice Cahn required each of the ten Pan Atlantic Respondents to submit to the AAA Arbitration, denied Pan Atlantic's request to move the action to the trial calendar, and rejected Pan Atlantic's efforts to stay the arbitration. The Special Proceeding provided for no other trial.

Through the Special Proceeding, however, Republic also sought confirmation of the arbitration awards, and thus until the application for confirmation is decided, "the entirety" of the claim Republic tendered for decision in the Special Proceeding has not been adjudicated.[11] Nonetheless, this fact should give Pan Atlantic no comfort. There has already been an adjudication on the merits of a significant portion of the relief Republic sought through the Special Proceeding.

Thus, to the extent "the entirety" of the relief sought can be equated to a trial, that trial had begun and judgment had been partially rendered before the removal. The removal statute "does not say that the filing of the petition is authorized at any time before the *end of the trial....*" *Aktiebolaget Svenska Handelsbanken v. Chase Nat. Bank,* 69 F.Supp. 833, 835 (S.D.N.Y.1947) (construing 12 U.S.C. § 632, which permits removal "at any time before the trial") (emphasis supplied). To allow a removal after litigation on the merits has been joined although not completed would only work to give Pan Atlantic an unfair tactical advantage.

The conclusion that at the latest by June 1994, the date of Justice Cahn's decision, Pan Atlantic had lost its right of removal is further confirmed by the construction which the clause "before the trial" has been given in the context of other civil removal statutes.[12] Courts in this Circuit, interpreting the identical clause in other statutes, have held that a "trial" may consist of the resolution of substantive issues of law or fact by the state court or even the argument of such issues. *See Hill v. Citicorp,* 804 F.Supp. 514, 516 (S.D.N.Y.1992) (since the defendants litigated a potentially dispositive motion (motion to dismiss for *forum non conveniens*) they could not remove the case pursuant to 12 U.S.C. § 632; "substantive activity addressed to the merits of the case in state court constitute[d] the commencement of a trial, while procedural motions d[id] not"); *Manas y Pineiro,* 443 F.Supp. at 420 (litigation of summary judgment in state court deprived defendant of its right to remove case under 12 U.S.C. § 632); *Aktiebolaget Svenska Handelsbanken v. Chase Nat. Bank of New York City,* 69 F.Supp. 833, 834 (S.D.N.Y.1947) (the *argument* of a motion for

---

**11.** Initially, Republic also sought to enforce the escrow order of the AAA panel, but has since asked the Court to reserve decision in compliance with the panel's request that enforcement await a supplemental report from Arthur Anderson.

**12.** The clause "before the trial" has been used in at least 6 removal statutes applying to civil actions, other than 9 U.S.C. § 205. *See, e.g.,* 12 U.S.C. § 632; 12 U.S.C. § 1452(e); and 22 U.S.C. §§ 282f, 283f, 285f, 286g.

The language also appears in 28 U.S.C. § 1446, a statute allowing for removal of criminal actions, and in other statutes applying to criminal actions. Pan Atlantic cites authority interpreting "before the trial" in the criminal context to mean before a jury is empaneled. The question of what constitutes a "trial" may be quite different in the civil context, however, where—as demonstrated in this very case—there may never be a "trial" in the traditional sense of the word.

judgment on the pleadings constituted a "trial", which was defined as "a judicial examination of the issues between the parties, whether they be issues of law or fact", and prevented removal under 12 U.S.C. § 632). Indeed, under the 1875 removal statute, a predecessor statute allowing removal "before or at the term at which said cause could first be tried and before the trial thereof", the time for removal expired when a general demurrer had been overruled with leave to answer. *Alley v. Nott*, 111 U.S. 472, 475–76, 4 S.Ct. 495, 496–97, 23 L.Ed. 491 (1884). As the Supreme Court has stated in construing the phrase "before trial" in connection with the 1875 removal provision in *Removal Cases*, 100 U.S. 457, 25 L.Ed. 593 (1879), "to allow a party to experiment on his case in the State court, and, if he met with unexpected difficulties, stop the proceedings, and take his suit to another tribunal" is clearly not what Congress intended. 100 U.S. at 473.

Moreover, a decision that the removal by Pan Atlantic pursuant to the Convention's removal provision was untimely will further the important goal of enforcing international arbitration agreements by discouraging litigation tactics undertaken to delay enforcement. As the Supreme Court observed in *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 515–16, 94 S.Ct. 2449, 2455–56, 41 L.Ed.2d 270 (1974),

> A contractual provision [such as an arbitration clause] specifying in advance the forum in which disputes shall be litigated and the law to be applied is . . . an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction. . . . A parochial *refusal* by the courts of one country *to enforce an international arbitration agreement would* not only frustrate these purposes, but would *invite unseemly and mutually destructive jockeying by the parties to secure tactical litigation advantages.*

417 U.S. at 516–17, 94 S.Ct. at 2455–56. Thus, in *Scherk*, the Court held that an arbitration agreement in an *international* commercial transaction would preclude litigation even when there were claims that a party to the agreement had violated the antifraud provisions of the Securities Exchange Act of 1934. To reach this conclusion, the Court distinguished its prior holding in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), that an agreement to arbitrate could not preclude a buyer of a security from seeking a judicial remedy under the Securities Act of 1933, on the ground that *Wilko* did not entail an *international* commercial transaction. *See also Mitsubishi Motors v. Soler Chrysler Plymouth*, 473 U.S. 614, 629, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985) (same exception for international arbitration agreements in antitrust cases). And, as the Second Circuit has stressed in *Fotochrome, Inc. v. Copal Co.*, 517 F.2d 512, 516, 519 (2d Cir.1975), "[t]he public policy in favor of international arbitration is strong," and there is a "need for encouraging international arbitration and for putting no roadblocks in its way." In *Fotochrome*, the Court held that, in view of strong public policy favoring international arbitration as implemented by the Convention, a bankruptcy court did not have power to relitigate a dispute resolved by binding foreign arbitration.

Finally, while the time by which a removal decision may be made is more generous in Section 205 than in the general removal statute, the policy considerations pertaining to removal in general nonetheless retain value. The comparatively generous time limit in Section 205 should not be read as an endorsement of the kind of tactical removal so arduously avoided under other removal statutes. An interpretation of "trial" that includes resolution of actively litigated substantive issues, would provide defendants with ample time to pursue removal without providing them with an unfair strategic advantage. This interpretation also serves the interests of judicial economy and comity, particularly when the parties have agreed, as they have here, that New York law will govern their disputes. *See, e.g., Manas v. Pineiro*, 443 F.Supp. at 420.

Pan Atlantic makes several arguments in support of its assertion that the removal is timely, none of which is persuasive. First, Pan Atlantic attempts to distinguish between the enforcement of an agreement to arbitrate, which it argues cannot be a trial, and

the confirmation of an award, which it argues must constitute the trial. The hearing envisioned under the New York State statutory scheme going to the merits of the dispute, however, occurs in the stage before the arbitration, when a court is empowered to try any substantial question as to whether there is a valid agreement to arbitrate. N.Y.Civ. Prac.L. & R., § 7503(a). The parties submitted this issue to Justice Cahn through their motions made in October and December of 1993, and he decided this issue in his June 10, 1994 Opinion. Moreover, if anything else connected to the Special Proceeding is equivalent to a trial, it is the arbitration itself and not the confirmation of the award, which is necessarily a severely circumscribed inquiry. Again, Pan Atlantic chose not to remove the action before the arbitration.

Pan Atlantic also argues that the Convention and its statutory removal provision were designed to avoid "parochialism" that could undermine arbitration agreements and awards by providing broad federal jurisdiction over these arbitration actions. Parochialism is primarily a concern regarding the failure by a *country* which is a party to the Convention to recognize and enforce arbitration agreements and awards. *Scherk*, 417 U.S. at 516–17, 94 S.Ct. at 2455–56. While a parochial refused by a state court to recognize an international arbitration agreement could be a problem, it has not been one in the New York actions. With the singular exception of the Texas action, in every state and federal action so far, the courts have sought to enforce the arbitration clause. Moreover, even the case on which Pan Atlantic principally relies in urging broad federal jurisdiction, *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1208–9 (5th Cir.1991), recognized that federal courts do not have exclusive jurisdiction over Convention cases. Finally, Pan Atlantic's argument that broad jurisdiction in the federal courts will better achieve the policy of enforcing agreements to arbitrate and arbitration awards rings hollow when Pan Atlantic has consistently resisted arbitration and the enforcement of the arbitration awards.

Pan Atlantic next cites two cases for the proposition that the statute should be construed broadly in favor of removal to federal courts. Neither of these cases, however, involved the question of whether a removal was timely, and, therefore, neither had cause to address the concerns articulated here, *i.e.*, concerns regarding the strategic use of removal for tactical advantage, and concerns of judicial economy. Both of these cases addressed only the question of whether an action "relates to" an arbitration under the convention, something not in dispute here. *York Hannover Holding A.G. v. American Arbitration Association*, 794 F.Supp. 118, 122 (S.D.N.Y.1992); *Cam S.A. v. ICC Tankers Inc.*, No. 88 Civ. 9274 (KMW), 1989 WL 51815 (S.D.N.Y. May 10, 1989).

Pan Atlantic goes on to argue that the "very plain, very broad, very permissive" language of the statute regarding *when* an action can be removed should also be interpreted broadly. The cases it cites for this proposition, however, hold merely that unlike Section 1446, Section 205 gives defendants more than 30 days after receipt of the initial pleading to remove. *See, e.g., Dale Metals Corp. v. Kiwa Chemical Industry Co., Ltd*, 442 F.Supp. 78, 81 n. 1 (S.D.N.Y.1977) (where there was "no dispute that the case was removed before trial", language of Section 205 is plain that defendants could remove at any time before such trial).

■ Pan Atlantic argues that the Convention is concerned primarily with the enforcement of *awards*, and that therefore a trial cannot be said to have taken place except where the award is confirmed. In a passage Pan Atlantic is forced to acknowledge, however, the Supreme Court observed that the Convention has dual goals.

> The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, *was to encourage the recognition and enforcement of commercial arbitration agreements* in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.

*Scherk v. Alberto–Culver Co.*, 417 U.S. at 520 n. 15, 94 S.Ct. at 2457–58 n. 15 (emphasis supplied). The purposes of the Convention, then, are twofold: to enforce arbitration

agreements, and to enforce arbitration awards. Both of these purposes are being achieved in the actions before Justice Cahn.

Pan Atlantic's removal of the Special Proceeding at this stage has succeeded in delaying the enforcement or vacatur of an arbitration award, and is more indicative of its dissatisfaction with the results in State Court and before the AAA Arbitration panel than of its need for a federal forum. Having litigated substantive and important issues before Justice Cahn, Pan Atlantic cannot now decide to try again in another forum.

This Court therefore finds that the removal pursuant to 9 U.S.C. § 205 was not timely.

**B. The General Removal Provision: 28 U.S.C. § 1441 *et seq.***

Pan Atlantic argues, in the alternative, that removal of the Special Proceeding was proper under 28 U.S.C. § 1441 *et seq.,* the general removal provision within the United States Code. Section 1446(b) provides that

> a notice of removal may be filed *within thirty days* after receipt by the defendant, through service·or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first .be ascertained that the case is one which is or has become removable, except that a case *may not be removed* on the basis of jurisdiction conferred by section 1332 of this title *more than 1 year after commencement of the action.*

28 U.S.C. § 1446(b) (emphasis supplied). According to Pan Atlantic there is jurisdiction from the presence of both federal questions, 28 U.S.C. § 1331, and diversity, 28 U.S.C. § 1332. Section 1446(b), however, specifically limits the timing of removal of diversity cases to 1 year after the commencement of the action. The Special Proceeding was commenced in March of 1993, well over one year before Pan Atlantic sought removal. Without deciding whether diversity exists,

removal based on diversity jurisdiction is no longer available.

Pan Atlantic makes several arguments in favor of jurisdiction by federal question: first, that 9 U.S.C. § 203 conveys federal jurisdiction on actions falling under the Convention; second, that the Convention and the Federal Arbitration Act confer federal jurisdiction through 28 U.S.C. § 1337; and third, that the All Writs Act, 28 U.S.C. § 1651, provides federal jurisdiction.[13] In order for removal to be timely under § 1446(b), however, a federal question that was not present in the initial pleadings must have arisen within 30 days of Pan Atlantic's notice of removal. This is not the case for any of the federal questions urged by Pan Atlantic.

■ Any jurisdiction conveyed by 9 U.S.C. § 203 was present from the commencement of the Special Proceeding, as this proceeding *related to* the same arbitration throughout. The same is true of any argument in favor of jurisdiction by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq. See also Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 25, n. 32, 103 S.Ct. 927, 942, n. 32, 74 L.Ed.2d 765 (1983) (the Federal Arbitration Act does not create independent federal jurisdiction).

■ The All Writs Act has been applied to remove an otherwise unremovable case only in "exceptional circumstances" to " 'effectuate and prevent the frustration of orders [the federal court] has previously issued in its exercise of jurisdiction otherwise obtained.' " *In re Agent Orange Prod. Liab. Litig.,* 996 F.2d 1425, 1431 (2d Cir.1993) *citing United States v. New York Tel. Co.,* 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977). Pan Atlantic relies principally on *Neuman v. Goldberg,* 159 B.R. 681 (S.D.N.Y.1993), to argue that the exceptional circumstances here warrant invocation of the All Writs Act. In *Neuman,* the Court removed a state court action which had not only overlapping, but "in many instances, verbatim" allegations to

---

**13.** The initial pleadings in the Special Proceeding contained no federal questions. The Southern District Cases are all premised on diversity jurisdiction and presented no federal questions either, so Republic's motion on October 21, 1994, to confirm arbitration awards which en-

compassed issues referred by the Southern District cases did not confer federal question jurisdiction in and of itself. Pan Atlantic argues that the absence of federal claims in the pleadings is a result of "artful pleading" by Republic. There is nothing in the record to support this assertion.

those contained in one of 47 federal actions which had been consolidated into a multidistrict litigation. The state court action threatened "to disrupt the orderly resolution of the consolidated" litigation. *Id.* at 685. The state action also related to a pending federal bankruptcy proceeding and there was a "very real possibility of inconsistent and conflicting declarations" between the two actions. *Id.* at 686.

There are no such "exceptional circumstances" present here. The proceedings in New York State court, which have been pending for years, have not threatened in any way the orderly progress of the litigation in the federal courts. On the contrary, the New York Supreme Court has acted consistently to enforce the agreement to arbitrate and the arbitration awards, and has done nothing inconsistent with the three actions filed in the Southern District of New York, each of which has itself ruled that the issues must proceed to arbitration. While there is a theoretical potential for inconsistent or conflicting judgments in the state court and federal actions, the realistic likelihood of such an occurrence is small. With the issuance of the arbitration awards, the issues remaining before the federal court are those very narrow ones having to do with vacating or affirming the awards. This is not, therefore, an appropriate case in which to invoke the extraordinary power available through the All Writs Act.

### C. The Civil Rights Removal Provision: 28 U.S.C. § 1443(2)

■ Finally, Pan Atlantic urges that the Special Proceeding may be removed pursuant to the Civil Rights Removal Provision of Title 28, United State Code, Section 1443(2). Section 1443 provides:

> any of the following civil actions ... commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending: ...
>
> (2) For *any act under color of authority derived from any law providing for equal rights,* or for refusing to do any act on the ground that it would be inconsistent with such law.[14]

(emphasis supplied).

Pan Atlantic makes a tortured attempt to fit this case under Section 1443(2).[15] The *ex parte* state court attachment order of October 24, 1994, it argues, was an unconstitutional act in violation of Pan Atlantic's rights under the Full Faith and Credit Clause and the Due Process Clause. Republic's enforcement of this order was undertaken under color of state law, bringing this violation within the ambit of Section 1443(2). The order became a violation of federal rights guaranteeing equality of treatment by its discriminatory application to foreigners of the state court attachment procedures. The argument, while creative, is not successful. Section 1443(2) "is available only to federal officers and to persons assisting such officers in the performance of their official duties." *City of Greenwood v. Peacock,* 384 U.S. 808, 815, 86 S.Ct. 1800, 1805, 16 L.Ed.2d 944 (1966). This is clearly not the case here, and removal is therefore not available to Pan Atlantic under 28 U.S.C. § 1443(2).

### III. The PAG Action

Because PAG is the plaintiff, and not a defendant, in the PAG Action, the PAG Action can only be removed by virtue of its relationship to the Special Proceeding. Therefore, the decision to remand the Special Proceeding controls the destiny of the PAG Action as well.

### CONCLUSION

For the above reasons, Republic's motion to remand is granted. The PAG Action and

---

14. Pan Atlantic does not contend that Section 1443(1) is a ground for removal.

15. In holding that the District Court's remand was not reviewable on appeal pursuant to 28 U.S.C. § 1447(d), the Second Circuit in *LaFarge Coppee* cited an exception for cases removed pursuant to the civil rights statute, 28 U.S.C. § 1443. 31 F.3d at 71.

the Special Proceeding are remanded to the New York State Supreme Court.

SO ORDERED: